

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0171-16

### CLIFFORD WAYNE GREEN, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### MCLENNAN COUNTY

**ALCALA, J., delivered the opinion for a unanimous Court. RICHARDSON, J., filed a concurring opinion in which KELLER, P.J., joined.**

### O P I N I O N

In this State's petition for discretionary review, we determine whether the court of appeals erred by holding that trial counsel for Clifford Wayne Green, appellant, rendered ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The court of appeals held that appellant's trial counsel was ineffective under that standard. The court of appeals explained that counsel performed deficiently by failing to more timely object

to testimony by an expert witness who was called by the State at appellant's trial but who had previously been retained by and consulted for appellant in that same case, and the court further held that counsel's failure to more timely object to the State's use of that expert at appellant's trial prejudiced appellant. The court of appeals's opinion, however, erred in several respects—by failing to presume that counsel had a reasonable strategy for declining to object earlier to the expert's testimony, by finding that counsel performed deficiently without identifying the particular objection that counsel should have asserted, and by neglecting to consider whether the trial court would have erred by overruling such an objection. We, therefore, sustain the State's complaint that the court of appeals mistakenly concluded that counsel was ineffective under the *Strickland* standard for determining ineffectiveness. Because it had ruled in favor of appellant under *Strickland*, the court of appeals found it unnecessary to reach appellant's complaint that he had received constitutionally ineffective representation under the theory that his retained expert's testimony for the State violated his Sixth Amendment right to conflict-free representation under *Cuyler v. Sullivan*, 446 U.S. 335 (1980). The State suggests that the court of appeals should have addressed appellant's complaint under *Cuyler*, and we agree. We reverse the judgment of the court of appeals and remand this case to that court for further consideration of appellant's complaint under *Cuyler*.

## I. Background

When she was a senior in college, the complainant confided in her pastor that

appellant had sexually abused her around a decade earlier. The complainant and her mother, appellant's former girlfriend, reported the abuse to the police. Appellant was charged with two counts of aggravated sexual assault of a child.[1]

Appellant pleaded not guilty to the charges, and his cases proceeded to trial. In anticipation of trial, appellant's counsel retained Dr. William Lee Carter, a psychologist and specialist on child sexual-assault victims, as a consulting expert to examine appellant and aid counsel with trial preparation. Dr. Carter met with appellant and prepared a psychological evaluation report on him for trial counsel. Approximately one year later, as appellant's trial neared, the State gave appellant notice of its intent to call Dr. Carter as an expert witness. Appellant's trial counsel did not file any pretrial motions to prevent Dr. Carter's testimony, nor did he notify the State that Dr. Carter had previously consulted with the defense.

At trial, the State called Dr. Carter. The State began its examination of Dr. Carter by laying the foundation for his testimony about the general characteristics of sex offenders and the reasons why complainants may have a delayed outcry. During this line of questioning, the State asked Dr. Carter whether he had evaluated appellant. Dr. Carter answered that he had not, and he continued to testify about general characteristics typical to delayed outcries in sex offenses involving children.

At the point at which the State's questions moved from general characteristics of sex cases involving children to whether the particular circumstances of this case appeared to be

---

[1]

    *See* TEX. PENAL CODE § 22.021(a)(1)(A)(i), (iii).

consistent with those general characteristics, trial counsel asserted an objection to Dr. Carter's testimony. Counsel's objection occurred approximately thirty minutes into Dr. Carter's testimony. After approaching the bench, counsel notified the court and the State that Dr. Carter had evaluated appellant and consulted for the defense.

The trial judge conducted a hearing outside the presence of the jury to fully inquire into the merits of counsel's objection and discussed the matter in detail with trial counsel. Counsel explained to the trial court that he was objecting on the basis of a violation of appellant's attorney-client privilege so that the expert would not reveal any confidential communications that had occurred between the expert and appellant.[2] Trial counsel indicated that he did not know what Dr. Carter's duties were with respect to Dr. Carter's obligation to inform the State that he had been hired by appellant. Counsel further indicated that he had assumed that Dr. Carter had told the State prosecutors about his relationship with appellant, and he expressed that he was surprised when Dr. Carter testified that he had never consulted

---

[2]

At the bench discussion at trial, trial counsel described his objection as being based on a violation of appellant's attorney-client privilege by stating,

I've asked [Dr. Carter] to evaluate [appellant] to—to—to give me some—some insight on—on [appellant] in this instance, and I'm getting concerned that we're going down a slippery slope here, and—and I know Dr. Carter didn't do anything wrong, but they did ask him if he's evaluated my client, and, of course, we have this attorney-client privilege, and he—he had to answer "no," so—so the questions— questions that are being asked of him now, you know, are the generalization type question when—when he may already know the answer to my client, and—and there's where we're getting down a slippery—slippery slope because it's almost forcing me to—to ask him about issues that come up, and—and I certainly wasn't going to do that.

for appellant in this case.[3]

While still outside the presence of the jury, Dr. Carter explained that when the State had asked him during its direct examination whether he had evaluated appellant, he mistakenly denied having evaluated appellant. Dr. Carter indicated that he did not remember consulting for appellant. Dr. Carter noted that he recognized appellant's name but had

---

[3]

At the bench discussion at trial, the court and trial counsel discussed why counsel did not object until thirty minutes after Dr. Carter began testifying for the State:

| [Court] | . . . [L]ook, Dr. Carter spent 30 minutes here testifying for the State. What kind of position does that put him in regarding his professional duties and responsibilities when all this time you knew that he had examined your client, and I certainly didn't know it. The State didn't know it, so what—I'm—I'm really on the horns of a dilemma here. |
|---|---|
| [Trial Counsel] | Well, and—and—and that—that put me in a dilemma. I don't know what Dr. Carter's duties are. I—I would assume that he would have told them that—that [I] had retained him and that he—to do some work for [me], and—and now the situation is that he stated on the record that he didn't—I've never come across this, so it—it's a surprise that—that he's never evaluated [appellant] in this case. |

* * *

| [Court] | . . . [W]hen the State called [Dr. Carter] to the stand, you knew that Dr. Carter had evaluated your client, and you didn't say a word about having— |
|---|---|
| [Trial Counsel] | Well, I didn't say a word because I wasn't— |
| [Court] | — Any conflict. |
| [Trial Counsel] | I understand. I wasn't sure what—[for] what purpose they were calling him to at that time because we had gotten into —. |

incorrectly associated it with another individual whom he had evaluated for a different case. Because he did not recall having any role in this particular case for the defense or his evaluation of appellant, Dr. Carter told the trial court that none of his testimony was premised on his prior consultation with appellant or defense counsel.

The trial court overruled counsel's objection that had asserted a violation of the attorney-client privilege, and it allowed Dr. Carter to continue his testimony before the jury under the condition that he would not base his testimony on any information obtained from his prior interview of appellant. Trial counsel requested a mistrial on the basis that there was "an ethical dilemma with Dr. Carter's involvement." The court denied the motion, explaining that Dr. Carter had already testified without any objection and that this objection was not timely at that point.

Dr. Carter resumed his testimony in the presence of the jury, but he moved from general characteristics of sex offenders to the matter of whether the circumstances in this case were consistent with those characteristics. For example, he opined that the complainant's outcry appeared to be credible because it pertained to a specific incident in detail and was made to her pastor. At the conclusion of Dr. Carter's testimony, the trial court confirmed outside the presence of the jury that none of his testimony had included any confidential communications or information that he had received from appellant.

The jury convicted appellant of a single count of aggravated sexual assault of a child and sentenced him to 35 years' imprisonment and a $10,000 fine, and it acquitted him of a

second count of aggravated sexual assault of a child. After obtaining new appellate counsel, appellant filed a motion for new trial asserting that he was "denied his right under the attorney-client privilege due to the consulting doctor of [appellant], Dr. Carter, being called to testify by the State and on behalf of the State over objection of counsel." Appellant's motion for new trial, however, did not assert a complaint about ineffective assistance of trial counsel.

The trial court held an evidentiary hearing on appellant's motion for new trial at which appellant's trial counsel and Dr. Carter each testified. Trial counsel said that he paid Dr. Carter $850 to do an examination of appellant and generate a report to aid in trial preparation. Counsel testified that appellant never waived his right to attorney-client privilege with respect to his communications with Dr. Carter. When asked whether he had received notice from the State of its intent to use Dr. Carter as a testifying expert, trial counsel remarked that he was aware of this fact before trial, that he was unaware of any obligation on his part to inform the State that its expert had been hired by the defense in that same case, and that he believed that Dr. Carter would inform the State about his consultation with appellant.[4] Although he acknowledged that Dr. Carter had not revealed any privileged

---

[4]

When asked during cross-examination at the evidentiary hearing whether, prior to the trial, he knew that Dr. Carter was going to be called by the State, trial counsel responded,

I knew—the State gives me notice a couple of weeks, and this is where the issue came up. I knew he was going to. I didn't know what my obligation was. I had assumed—and I assumed wrong—that Dr. Carter would let the State know that he did an evaluation of some form or fashion, and I don't know how he handles his

or confidential information about appellant while testifying at trial, counsel opined that Dr.
Carter's testimony was detrimental to appellant in that it was introduced to persuade jurors
with respect to how to assess the evidence in the case.[5]  In addition to counsel's testimony
at the new-trial hearing, the trial court heard from Dr. Carter, who stated that he did not
utilize or divulge any information learned from his consultation with the defense.  Dr. Carter,
however, acknowledged that, had he remembered that he had consulted for the defense, he
would have declined to be an expert for the State.

The court denied appellant's motion for new trial.  In support of his ruling, the trial
judge made what he characterized as "findings" on the record. The judge found that an
attorney-client privilege existed between appellant and Dr. Carter and that appellant never
waived that privilege, but he further determined that no confidential communications were
ever disclosed to the State or jury in this case.

On appeal, appellant complained, for the first time, that he "received ineffective
assistance of counsel" on the basis that Dr. Carter's role as a testifying expert for the State
denied appellant his Sixth Amendment right to "conflict-free representation."  In his brief

---

practice.  That's a question you'll have to get from him.

Counsel's statement that he "didn't know what my obligation was" appears to refer to whether he
had any obligation prior to trial to inform the State that its expert was also appellant's hired expert.

[5]
At the motion-for-new-trial hearing, appellate counsel asked trial counsel whether Dr.
Carter's testimony "assisted the State to the detriment of [appellant]?"  Trial counsel responded,
"Yeah. I mean, his testimony is to persuade the jurors to look at different issues, so, I mean I would
agree that it did."

to the court of appeals, appellant asserted that a "conflict of interest existed" because the same expert who he had paid to consult for him and who had "reviewed records of the police, as well as juvenile and parole records of the Appellant," had also been paid for his services as an expert by the State in the same case. Appellant expressly described the scope of his complaint by arguing "that he was denied conflict-free representation due to Dr. Carter's testimony on behalf of and for the purpose of aiding the State of Texas to obtain a conviction against appellant." Appellant contended that Dr. Carter had an actual conflict of interest because he had to "make a choice between advancing his client's interests in a fair trial or advancing other interests to the detriment of his client's interests." Appellant argued that *Cuyler v. Sullivan* provides that the Sixth Amendment's guarantee of conflict-free representation necessarily extends to the defense's retained expert, Dr. Carter, who was an arm of the defense team and, thus, that Dr. Carter's work with and testimony on behalf of the State violated that constitutional right. *See Cuyler*, 446 U.S. at 345. Appellant asserted that, because he had established the two required prongs in *Cuyler* by demonstrating (1) that his counsel was burdened by an actual conflict and (2) that the conflict actually affected the adequacy of counsel's representation, he was entitled to relief without having to further demonstrate prejudice under the *Strickland* standard for ineffective assistance of counsel.

In explaining that the focus of his complaint was the denial of conflict-free representation due to Dr. Carter's testimony on behalf of the State, appellant clarified that he was not making an evidentiary-based challenge. He specifically stated that he "does not

complain that his attorney-client privilege was violated" as a result of Dr. Carter's testimony. Appellant further focused his appellate complaint by stating, "Confidential communications are not the point of this appeal, but the conflict of interest is Appellant's focus."

The court of appeals held that appellant's trial counsel rendered ineffective assistance of counsel under *Strickland,* and it declined to address appellant's conflict-of-interest challenge based on *Cuyler. Green v. State*, No. 10-14-00161-CR, 2015 WL 9462134, at *2, *4 (Tex. App.—Waco Dec. 23, 2015) (mem. op., not designated for publication). Although it acknowledged that appellant's stated complaint asserted ineffective assistance of counsel based on a lack of conflict-free representation, the court of appeals reversed appellant's conviction on the basis of ineffective assistance of counsel under the theory that trial counsel performed deficiently "in allowing a retained defense expert to testify on behalf of the State." *Id.* The court of appeals considered trial counsel's failure to more timely object to the testimony by Dr. Carter as a narrower basis on which to sustain appellant's complaint, as compared to appellant's broader challenge that he was denied his Sixth Amendment right to conflict-free representation because a member of his defense team was also a paid testifying expert for the State in the same case. *See id*. at *3 n.1. The court of appeals specifically stated that, given its determination that appellant's trial counsel had rendered ineffective assistance under *Strickland*, it "need not reach the broader issue . . . that experts are necessarily included to the same extent as attorneys in having conflict-free counsel under the Sixth Amendment" under *Cuyler. Id*. The court of appeals explained that it was permitted

to reframe appellant's argument to its narrower focus because the rules of appellate procedure allow it to address any subsidiary question that is fairly included in the issue or point raised on appeal by an appellant. *Id*. at *3. (citing TEX. R. APP. P. 38.1(f)).

The court of appeals held that appellant received ineffective assistance of counsel due to trial counsel's failure to more timely object to Dr. Carter's testimony by applying the two-prong standard in *Strickland*. *Id*. at *4. Under the first prong, the court determined that trial counsel performed deficiently by failing to bring the expert's conflict to the attention of the State or the trial court prior to the expert's testimony and by permitting the expert to testify for approximately thirty minutes on behalf of the State before trial counsel objected to the testimony. *Id*. The court explained its reasoning as follows:

> Under the extremely unusual circumstances of this case, the record contains all the information we need to make a decision. . . . We find that no reasonable trial strategy could justify counsel's conduct in allowing the retained defense expert to testify favorably for the State. We further find that counsel's performance falls below an objective standard of reasonableness.

*Id*. The court determined that counsel's failure to timely object at trial to any testimony from his own hired expert fell below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflected trial counsel's subjective reasons for acting as he did. *See id*.

Under the second prong, the court of appeals determined that trial counsel's deficient performance prejudiced appellant. *Id*. The court concluded that there was a reasonable probability sufficient to undermine confidence in the outcome of the case under the theory

that counsel's more timely objection to the hired expert's testimony would have prevented that expert from giving any testimony at all at appellant's trial. *See id*. The court determined that appellant was prejudiced because Dr. Carter's testimony bolstered the complainant's credibility and explained the reasonableness of the delay in her outcry, both of which were central issues at trial. *Id*.

The State's petition for discretionary review challenges the dual holdings of the court of appeals by asking whether "the court of appeals' analysis of ineffective assistance of counsel was tainted by its improper reframing of [appellant's] issue." First, with respect to the court of appeals's *Strickland* analysis, the State contends that the court of appeals's opinion's analysis was flawed in many respects. The State observes that the opinion did not, as required in light of the silent record as to counsel's actual rationale for his actions or inactions, presume that counsel could have had a reasonable strategic motive for not objecting earlier. The State surmises that trial counsel could rationally have decided not to object earlier to Dr. Carter's testimony because counsel was familiar with and had prepared for that particular expert, and the State could have acquired a different expert to testify in the stead of Dr. Carter if counsel had objected prior to trial or earlier than he did at the trial. The State contends that, because no confidential communications were disclosed by the expert, any objection by trial counsel on the basis of a complaint under Rule 503(b) of the Rules of Evidence for attorney-client or work product privilege would have been properly overruled by the trial court. *See* TEX. R. EVID. 503(b). The State asserts that trial counsel may not be

held to be deficient for failing to make what would have been a futile objection under the rules of evidence. Furthermore, the State observes that the court of appeals's opinion did not identify any other objection that counsel should have asserted that would have successfully kept the expert from testifying in the case or discuss whether the trial court would have erred by overruling such an objection. Second, with respect to the court of appeals's decision to not address appellant's *Cuyler* challenge, the State contends that the court of appeals erred by failing to analyze appellant's actual complaint that his expert was an arm of the defense team and that his right to conflict-free representation was violated by Dr. Carter's testimony at the trial.

In response to the State's petition, appellant contends that the court of appeals's ruling was proper because there "was an actual conflict of interest" between the expert and appellant. Appellant asserts that trial counsel should have objected more timely to the State's use of the expert.

## II. Analysis of Ineffective Assistance under *Strickland*

We agree with the State that the court of appeals erred by holding that counsel was ineffective under *Strickland*. After reviewing the applicable law, we conclude that, under the parameters in which it addressed this case, the court of appeals erred by determining that counsel performed deficiently. In examining whether counsel performed deficiently, the court of appeals should have presumed a rational strategic motive because counsel's testimony about his reasons for his actions and inactions was limited to the evidentiary

challenges based on the attorney-client privilege and confidential communications and did not address other possible complaints. Because we conclude that appellant has not established that counsel performed deficiently, we need not address whether appellant was prejudiced by counsel's performance.

For him to prevail under *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's deficient performance, a reasonable probability exists that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694. Courts will not speculate to find counsel ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012). We presume a reasonable trial strategy if any can be objectively plausible. *Id.* In the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined. *See Ex parte Saenz*, 491 S.W.3d 819, 828 (Tex. Crim. App. 2016).

Because appellant's new-trial motion did not allege ineffective assistance of trial counsel, counsel has never explained his actual reasons for not asserting an objection on some basis other than the attorney-client privilege that was the subject of the motion-for-new-trial hearing. In his testimony at the hearing on appellant's motion for new trial that was based on appellant's assertion that Dr. Carter's testimony violated his attorney-client privilege, trial counsel explained his reasons for deciding not to assert an objection earlier

than he did on the basis of privilege. Counsel said that he did not inform the State prior to trial that Dr. Carter had consulted with appellant in that same case because counsel believed that Dr. Carter would have informed the State of that fact. Counsel also explained that he did not believe that Dr. Carter was revealing confidential communications during his testimony and that, at the point at which that could have become an issue, counsel asserted an objection. As to counsel's inaction in failing to assert an objection based on the attorney-client privilege or confidential communications earlier than he did, the record supports a conclusion that, at the point during the proceedings when it appeared that Dr. Carter might reveal confidential communications he had with appellant, counsel acted reasonably in asserting an objection on that ground at that time. In fact, it is undisputed in this case that no confidential communications were ever revealed on the basis of Dr. Carter's consultation with appellant. In any event, appellant expressly disclaimed any complaint premised on a violation of the attorney-client privilege or revelation of confidential communications, and thus trial counsel may not be held to be ineffective under that rationale.

Having excluded arguments based on the attorney-client privilege and confidential communications, the court of appeals further narrowed its parameters for finding counsel ineffective by expressly excluding appellant's complaint that his Sixth Amendment right to conflict-free representation was violated under *Cuyler*, which we discuss in Section Three below. The court of appeals found counsel ineffective with a general assessment that trial counsel performed deficiently "in allowing the retained defense expert to testify favorably

for the State," but it did not identify any evidentiary theory or legal basis on which it relied

to hold that trial counsel was ineffective. *See Green,* 2015 WL 9462134, at \*3-\*5. A review

of the court of appeals's opinion reveals that it not only neglected to identify the legal

objection that trial counsel should have asserted, if any, but it did not consider whether the

trial court would have erred by overruling any such objection to the expert's testimony. *See*

*Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) ("[T]o successfully assert

that trial counsel's failure to object amounted to ineffective assistance, the [defendant] must

show that the trial judge would have committed error in overruling such an objection.");

*Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Because his testimony at the motion-for-new-trial hearing concerned only a complaint

based on a violation of the attorney-client privilege, counsel has never revealed his actual

reasons for his actions or inactions regarding his decision not to object to the expert's

testimony in its entirety on some other basis. The court of appeals acknowledged that

ordinarily courts will presume a strategic reason for an attorney's decision when the record

is silent as to his reasons for his decisions, but it could not ascertain any reasonable strategy

that would justify counsel's failure to object to Dr. Carter's testimony in its entirety. We

agree with the State that, given this largely silent record, we may presume that counsel could

reasonably have decided not to object to Dr. Carter's testimony any earlier than he did

because, if he had, the State would have, in all likelihood, obtained a different expert to

testify against appellant, and counsel might have been less prepared against that expert than

against Dr. Carter, a person with whom counsel was familiar. Counsel could have reasonably decided that, as the saying goes, it was better to deal with the devil you know than the one you don't know. When Dr. Carter testified that he had never met appellant, counsel reasonably could have decided not to object at that point because he could use that misstatement as a basis to impeach Dr. Carter's credibility before the jury. Furthermore, counsel could have reasonably determined that he would be able to exclude any attorney-client or confidential communications that occurred between counsel, appellant, and Dr. Carter, and, in fact, the record reveals that he was successful in that regard. Thus, given the parameters underlying the court of appeals's analysis, it is proper to presume that counsel had a reasonable trial strategy in permitting Dr. Carter's testimony. These types of trial strategies are case specific and are why this Court has said that what may appear to be gross error in one case could be brilliant strategy in another. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Given the parameters of appellant's arguments, we hold that the court of appeals erred by finding counsel performed deficiently under the *Strickland* standard. We do not address whether the evidence established that appellant was prejudiced because a defendant's ineffective-assistance complaint is properly denied under *Strickland* on the sole basis of his failure to establish that counsel performed deficiently. *See Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

### III. Failure to Analyze Complaint Regarding Conflict-Free Representation Under *Cuyler*

Having analyzed appellant's complaint under *Strickland*, the court of appeals never reached appellant's *Cuyle*r complaint. This Court ordinarily does not review issues on discretionary review that have not first been decided by the court of appeals, and we accordingly remand this case for the court of appeals to address appellant's unaddressed complaint in the first instance. *Blasdell v. State*, 384 S.W.3d 824, 828 n. 3 (Tex. Crim. App. 2012). On remand, therefore, the court of appeals must address appellant's complaint as he phrased it under *Cuyler*. *See Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007) (noting that a first-level appellate court has the obligation to conduct a thorough review of an appellant's claims); TEX. R. APP. P. 47.1 (appellate court must address "every issue raised and necessary to final disposition of the appeal").

### IV. Conclusion

We hold that the court of appeals erred by finding that counsel was ineffective under *Strickland*. We remand this case to the court of appeals for it to address appellant's remaining arguments pertaining to a violation of his right to conflict-free representation under *Cuyler*.

Delivered: March 22, 2017

DO NOT PUBLISH